Edwin M. Hukill, Appellant, *v.* Lorenzo T. Yoder and the West Penn Gas Company.

*Equity—Trust and trustees—Evidence—Responsive answer.*

On a bill in equity to have a trust declared in stock of a corporation, plaintiff averred that the stock had been transferred to the defendant in trust for plaintiff. Defendant averred that when the plaintiff was the owner of the stock, defendant was his creditor for a large amount, and also liable as his surety; that plaintiff was financially embarrassed and unable to carry the stock; that defendant then advanced his own money, took the stock, and made the company a success, and that he had no agreement to hold the stock in trust for plaintiff. The court below held that the answer was responsive to the bill and that plaintiff's evidence was insufficient to overcome it. It also appeared that in proceedings which had been instituted by creditors to set aside the transfer to defendant, plaintiff had said nothing of the alleged agreement with defendant, and in his testimony in those proceedings, introduced in evidence in the equity suit, he swore that it was his purpose that the legal title should be in defendant because he wanted it where it could not be reached. *Held*, that the court below committed no error in dismissing the bill.

Argued Nov. 10, 1898.   Appeal, No. 209, Oct. T., 1898, by plaintiff, from decree of C. P. No. 1, Allegheny Co., Sept. T., 1898, No. 473, dismissing bill in equity.   Before GREEN, Mc-COLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to declare a trust in stock of a corporation, securing a return of the stock and, incidentally, for discovery and account.

STOWE, P. J., found the facts to be as follows:

In September, 1893, Edwin M. Hukill (plaintiff) was the owner of 5,496 shares of the capital stock of 5,500 shares of the West Penn Gas Company, which was of considerable value, say in the neighborhood of $100,000, but which had no general marketable value, such as could be definitely estimated. Prior to August, 1893, plaintiff had pledged his entire stock as security for certain debts and liabilities, to wit: 200 shares to the South Penn Oil Company, as a guarantee of a certain business matter; 196 shares to secure a promissory note of $2,761.27 held by Spang, Chalfant & Co.; 2,000 shares to secure two notes amounting to $5,500 held by the Third National Bank of Pittsburg; 500 shares to secure a note of $5,000 held by the Bank of Monongahela Valley of Morgantown; 400 shares to secure a note of $5,000 held by L. T. Yoder (defendant) and 2,200 shares to secure the Apollo Savings Bank to the amount of $15,000, in all 5,496 shares to secure $33,261.27, actual indebtedness.

[In addition thereto the plant itself was subject to a bonded indebtedness of $30,000 secured by mortgage given to the Fidelity Title and Trust Company, and also to a mortgage of about $13,000 to the National Tube Works, and another to the American Tube Works and Iron Company amounting to some $22,000.   There was also due and owing by said gas company, in addition to the above, some $3,000 for wages to employees; $4,000 to J. W. Crosby for drilling wells, upon notes and open account $4,000; for rental for oil and gas rights about $10,000; upon right of way bonds about $10,000; a claim of Thomas Martin, since settled, for $150; a claim by the Jackson Farm Gas Company for gas furnished for $45,000, and the rental of the gas company was in September, 1893, upon oil and gas leases held by it the sum of $14,543.56.] [8]

At this time plaintiff was not the owner of any other property than this stock out of which he could realize money to pay his personal debts and liabilities, and which consisted of some $20,000 direct personal debts and $20,000 as accommodation indorser for the company. It is true he owned 996 shares of the Apollo Spring Water Company, but it was utterly insolvent, and upon sheriff's sale proved insufficient to pay its debts and leaving plaintiff liable as accommodation indorser for it to some $10,000.

The income of the gas company would seem to have been somewhat reduced by the limited demand for summer consumption, and perhaps from this as well as other causes plaintiff was short of money and unable to meet the demands of his creditors. At all events, whatever the cause, it is clear that he was in embarrassed circumstances.

In this condition of things plaintiff went to defendant and stated to him his circumstances. He made known to him that the water company was a failure and insolvent, and that there was danger of the creditors of that company making trouble, and might levy upon his gas stock, and that this gas company stock was all hypothecated, and that something must be done to protect that stock from creditors of the water company, and appears to have fully explained to him his financial condition, and solicited his assistance to relieve him from his embarrassment, and alleging that if the gas company stock were kept intact enough could be realized from it to pay defendant what was owing him and the other creditors, and still leave considerable stock for himself.

[Plaintiff's proposal there was, that defendant should assist him in getting the pledgees of the gas stock to take and hold the stock and operate the company to the end that all his creditors might be fully paid what was coming to them, and solicited defendant's assistance therein and agreed with him to allow him out of the same $5,000 for his assistance, to which defendant assented, and plaintiff and defendant then entered upon the undertaking, but failed in accomplishing the object proposed.

The allegation of plaintiff then is, " That defendant then proposed to, and offered, plaintiff to do it himself, and pay off all secured creditors, and take the stock himself in his own name,

and thereby, with plaintiff's aid therein handle the company so as to carry out and effect the purposes for which the said undertaking was entered into with plaintiff on behalf of his creditors and himself, to which plaintiff assented." Upon this vital question the allegation of plaintiff is distinctly and emphatically denied by defendant's answer, and I am compelled to hold the facts alleged are not sufficiently sustained by the evidence.

On the one side we have simply the averment in the bill and the evidence of plaintiff swearing to the same fact, and on the other the denial by defendant and his testimony to the same effect, and it follows, according to the well-established rule in equity, that I must find against plaintiff unless something can be made to appear why the answer should not have its ordinary effect.

The plaintiff, however, claims that such is the case, and invoking the rule in equity, " falsus in uno falsus in omnibus," urges that the answer should be discredited because the evidence shows that it is not true in a vital point, wherein he, defendant, alleges and says " plaintiff proposed to defendant to induce plaintiff's pledgees of his gas company's stock, to take and hold said stock and operate said gas company with the end in view to pay all the creditors of plaintiff, and all his liabilities, and asked defendant to aid and assist him in procuring said pledgees so to do. Pursuant to plaintiff's request, plaintiff and this defendant then endeavored to have the pledgees of said gas company stock carry out the plaintiff's desire, with relation to taking said stock and operating said company as aforesaid, but said pledgees, after some weeks' work by plaintiff and defendant, "refused so to do," assigning as his reason therefor that it was necessary to the defendant's answer, and to any color of credibility of his assumption of what followed, that he should allege, as he did, most positively, that the other pledgees of the stock "refused" to go into the arrangement admittedly agreed upon between defendant and Hukill. There is no question that the parties did in the first place have a mutual understanding, as claimed by plaintiff, in regard to getting the pledgees of the gas stock to take the stock and operate the company; but it is equally clear, that from some cause or other (whether the pledgees merely declined, neglected or absolutely refused, is immaterial) the whole attempt failed, and the plan was abandoned by

both parties. The plaintiff in his bill says: "Yoder entered upon the undertaking, and after first, with the assistance of this complainant, making efforts to have the creditors holding said stock co-operate, then proposed to and offered this complainant to do it himself," etc., to which this complainant assented. And defendant's answer is that "after some weeks' effort by plaintiff and defendant, pledgees refused, and thereupon the plan to induce said pledgees to hold said stock and operate the company was finally and positively abandoned by both plaintiff and defendant." And the evidence of both plaintiff and defendant clearly establishes the fact that the first plan was abandoned by mutual consent. Why it was abandoned does not seem to me to be a question of any importance in considering the merits of the cause. But assuming that it was a vital question, as claimed by plaintiff, I do not consider the evidence of Mr. Steinmeier, the cashier of the Third National Bank, that defendant did not attempt to make the arrangement he claims he did with him so distinct and certain as to throw such discredit upon defendant's answer as would justify the court in disregarding it as false.

Upon a consideration of the whole evidence I have discovered nothing, nor has anything been specially pointed out by counsel which, in my opinion, justifies me in concluding that defendant's answer should be discredited upon the principle invoked by plaintiff.] [1]

## LAW OF THE CASE.

The first question we will consider is whether plaintiff is barred or estopped by the proceedings at No. 768, December term, 1893, common pleas, No. 1, the same being an execution attachment, wherein Eliza G. Davis is plaintiff and E. M. Hukill (plaintiff here) was defendant, from maintaining this suit. We think not, and the question seems distinctly decided in the negative in Ruff v. Ruff, 85 Pa. 333.

Is he estopped by the proceeding in equity in common pleas, No. 3, at No. 463, May term, 1898, wherein Farras & Trefts are plaintiffs and E. M. Hukill (plaintiff here), S. W. Vandersaal and L. T. Yoder (defendants here) are defendants?

The issue in that case is whether the transfer and sale of stock of the gas company was made for the purpose of hinder-

ing or defrauding Hukill's creditors, and the decree was that no fraud existed.

This question here is entirely different, and is not whether there was a fraudulent sale of the property to Yoder, but whether the transfer of the stock to him was in trust for Hukill and his creditors. The issue was not the same in that case as it is here, and we therefore think plaintiff is not estopped thereby.

Having thus concluded that the records set up in defendant's answer above referred to will not prevent plaintiff's recovery in this suit, the next question is, how does his claim rest under the evidence advanced. By an examination of defendant's answer it will appear that every material averment of fact upon which plaintiff bases his claim and upon which he seeks to recover is clearly and distinctly denied by defendant, and so we are of opinion that nothing has been shown by plaintiff which would justify the court in refusing to give it the ordinary effect of answers responsive to bills in equity. We are led to the conclusion that under the evidence the plaintiff has failed to establish his case by sufficient proof, and that therefore his bill must be dismissed at his costs.

This bill is therefore dismissed at plaintiff's costs.

*Errors assigned* among others were (1, 8) portions of opinion as above; (10) in not affirming plaintiff's bill, and entering a decree against defendants as prayed for.

*M. A. Woodward*, with him *T. C. Lazear*, for appellant.—The answer, if held responsive, was overcome: Spencer & Newbold's App., 80 Pa. 317; Morris & Green v. White, 36 N. J. Eq. 324; Campbell v. Patterson, 95 Pa. 447.

*Willis F. McCook*, with him *A. M. Neeper*, for appellees.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

This is a bill to declare a trust and secure a return of certain stock, and incidentally for discovery, account, etc. In 1893 plaintiff was the owner of practically all the stock of the West Penn Gas Company and also of all the stock of the Apollo Spring Water Company. The latter company and plaintiff

individually were heavily in debt, and all his stock in the gas company was pledged as collateral for loans on notes which he could not meet. In this condition of affairs he applied to defendant to assist him, defendant at that time being a creditor to a considerable amount, and contingently liable to a still larger one as indorser for plaintiff. After some efforts to induce the pledgees of the gas company stock to unite in a plan to keep it together and sell the company plant as a whole, the defendant took it up. Without going into details, it is sufficient to quote the finding of the learned judge below, that " the evidence of both plaintiff and defendant clearly establishes the fact that the first plan was abandoned by mutual consent." Then as already said defendant took up the stock by advancing his own money or giving his notes, so that he became the legal owner of the stock, assumed the management of the company, and now after several years of effort has apparently made it profitable. So far the facts are uncontested, but at this point the plaintiff comes forward with his bill claiming that defendant acted throughout the transaction under an agreement that made him a trustee for plaintiff, and that he is now fraudulently holding the stock, etc., for his own benefit. This alleged agreement is the hinge of the case. It was denied by the defendant and the finding of the court below is that " by an examination of defendant's answer it will appear that every material averment of fact upon which plaintiff bases his claim and upon which he seeks to recover is clearly and distinctly denied by defendant, and we are of opinion that nothing has been shown by plaintiff which would justify the court in refusing to give it the ordinary effect of answers responsive to bills in equity. We are led to the conclusion that under the evidence the plaintiff has failed to establish his case by sufficient proof and that therefore his bill must be dismissed at his costs." An examination of the evidence leads us to concur in this result; a review of the testimony would serve no useful purpose and we might well leave the case here.

But there is another view which is equally conclusive. By the transactions in 1893, now in controversy, defendant became practically possessed of all the plaintiff's property, and this result was not allowed to go unchallenged by the latter's creditors. Suits were brought against plaintiff with defendant as

garnishee to set aside the transfers of stock as in fraud of creditors. One of them reached this Court, Davis v. Yoder, 173 Pa. 138. In none of these was the agreement now set up as the basis of this suit asserted or even admitted. On the contrary it was positively denied by defendant and either denied or studiously concealed by plaintiff. But without discussing the evidence in those cases, though the records or the portions of them containing plaintiff's testimony were put in evidence in this suit, it is sufficient to advert to the plaintiff's own admission in this case as to the nature of the transaction. He was asked: "Q. Up to the time you were turned out of office, you and your son, did Mr. Yoder ever intimate, or claim to you that he proposed to take or appropriate the stock to himself? A. Oh, no, no, if he had he wouldn't have got it. I supposed of course that the legal title was passing from me into Mr. Yoder, that I intended, because I wanted it where nobody could reach it, I wanted to put it in that shape where I could say that the legal title was in him and not in me, because we wanted it where it couldn't be reached." This answer alone is enough to turn plaintiff out of a court of equity. Assuming it to be true it shows that the transaction between plaintiff and defendant was a scheme to hinder and defraud the former's creditors, and equity will not assist him to get his share of the plunder.

Decree affirmed with costs.